Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/04/2018 08:10 AM CDT

T. Louise Ewers, personally and as Personal
Representative of the Estate of Mickley
(Michael) Lynn Ellis, appellant, v.
Saunders County, Nebraska, a political
subdivision, et al., appellees.

___ N.W.2d ___

Filed February 9, 2018.    No. S-17-251.

1. **Pretrial Procedure: Appeal and Error.** Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.
2. **Pretrial Procedure: Proof: Appeal and Error.** The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. **Pretrial Procedure: Evidence.** A party's failure to make a timely and appropriate response to a request for admission constitutes an admission of the subject matter of the request, which matter is conclusively established unless, on motion, the court permits withdrawal of the admission.
5. **Rules of the Supreme Court: Pretrial Procedure.** Neb. Ct. R. Disc. § 6-336 is self-enforcing, without the necessity of judicial action to effect an admission which results from a party's failure to answer or object to a request for admission.
6. **Rules of the Supreme Court: Pretrial Procedure: Evidence: Proof.** Neb. Ct. R. Disc. § 6-336 is not self-executing. Thus, a party that seeks to claim another party's admission, as a result of that party's failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer

or object to the request and must also offer the request for admission as evidence.

7. **Rules of the Supreme Court: Pretrial Procedure.** If the necessary foundational requirements are met and no motion is sustained to withdraw an admission, a trial court is obligated to give effect to the provisions of Neb. Ct. R. Disc. § 6-336 which require that the matter be deemed admitted.

8. **Malpractice: Physician and Patient: Proof: Proximate Cause.** In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was a proximate cause of the plaintiff's alleged injuries.

9. **Malpractice: Physicians and Surgeons: Proximate Cause: Damages.** In the medical malpractice context, the element of proximate causation requires proof that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff.

10. **Negligence: Proximate Cause.** A defendant's negligence is not actionable unless it is a proximate cause of the plaintiff's injuries or is a cause that proximately contributed to them.

11. **Negligence: Proximate Cause: Words and Phrases.** A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred.

12. **Proximate Cause: Words and Phrases.** A defendant's conduct is a proximate cause of an event if the event would not have occurred but for that conduct, but it is not a proximate cause if the event would have occurred without that conduct.

13. **Expert Witnesses: Proximate Cause.** Expert testimony is almost always required to prove proximate causation.

Appeal from the District Court for Saunders County: James C. Stecker, Judge. Affirmed.

Larry R. Demerath, of Demerath Law Office, and Justin B. Demerath, of O'Hanlon, McCollom & Demerath Law Firm, for appellant.

Joseph S. Daly and Mary M. Schott, of Sodoro, Daly, Shomaker & Selde, P.C., L.L.O., and J. Scott Paul, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees Advanced Correctional Health Care, Inc., et al.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

KELCH, J.

## INTRODUCTION

This appeal arises from the in-custody death of Mickley (Michael) Lynn Ellis. T. Louise Ewers, personally and as personal representative of Ellis' estate, brought a wrongful death action alleging medical malpractice by Advanced Correctional Healthcare, Inc. (ACH), and its agents in their individual and official capacities (collectively Appellees). Ewers also filed suit against Saunders County, the Saunders County sheriff's office, Saunders County Corrections, Saunders Medical Center, and Dan Scott, but those causes of action are not relevant to this appeal. Ewers now appeals from the orders of the district court for Saunders County that denied her discovery motions and granted Appellees' motion for summary judgment. We conclude that the district court did not err, and we affirm.

## BACKGROUND

Ellis was incarcerated in the Saunders County jail on May 27, 2010. During the morning of June 22, he spoke with Mallory Reeves, a licensed practical nurse employed by ACH, the medical contractor hired by Saunders County. In her notes, Reeves stated that Ellis wanted to talk to a counselor about nightmares he was having and that she told him to fill out a "sick call," which is how an inmate reports medical issues.

Instead of filling out a "sick call," Ellis filled out a "kite" form, which is how an inmate relays reports or requests to jail personnel. In the form, he requested help with his nightmares. He mentioned that he was having chest pain and "hard" breathing when he awoke from the nightmares and that he was waiting to find the right medication to help him. Ellis had a history of chest pain and shortness of breath after nightmares and, about 3 weeks prior, had been taken to a hospital for mental health issues.

After receiving the "kite" form, jail personnel completed an incident narrative. According to the incident narrative, jail personnel informed Reeves of the physical complaints Ellis described on the "kite" form, and she responded that it was not a medical issue, as Ellis was requesting to speak with someone, and that there was not anything she could do for him. At her deposition, Reeves did not recall that conversation but admitted that chest pain was a serious complaint that could be life-threatening. As a result of the "kite" form, an appointment was made for Ellis to speak with a pastor.

Ellis made no further complaints until 3:40 a.m. on June 25, 2010. He told jail personnel that he was having trouble breathing and that his back hurt. At 4 a.m., jail personnel contacted Mary Scherling, a nurse practitioner employed by ACH. She suggested that Ellis breathe into a bag, believing he was having a panic attack. At 4:08 a.m., jail personnel called Scherling back and reported that breathing into the bag was not helping and that Ellis was now complaining of chest pain. Scherling instructed jail personnel to take Ellis to the hospital. At the Saunders Medical Center, Ellis was treated for a heart attack, but he died at 6:20 a.m. from a bilateral pulmonary embolism.

Ewers, who is Ellis' sister, filed suit, alleging that Ellis' death and associated damages resulted from the negligence of Reeves and Scherling. Ewers sought damages from Reeves and Scherling in their individual capacities and from ACH. In part, Ewers specifically averred that as a result of the negligence of Appellees, Ellis experienced damages and injuries, including chest pain, trouble breathing, and nightmares.

## SUMMARY JUDGMENT

On January 6, 2017, Appellees filed a motion for summary judgment. The district court conducted a hearing and received evidence. For purposes of the appeal of the summary judgment, only the evidence relating to Reeves' conduct is relevant.

Victoria Halstead, a registered nurse, reviewed the autopsy report and medical records for Ellis and depositions by Reeves,

Scherling, the sheriff, and jail personnel. She explained in a deposition that any person who complains of chest pain or shortness of breath requires a face-to-face assessment. Therefore, she opined that Reeves should have conducted an in-person assessment of Ellis' condition on June 22, 2010. Further, in Halstead's opinion, Ellis should have been taken to a hospital to be examined by a physician that day.

Halstead conceded that other than the "kite" form that Ellis filled out on June 22, 2010, he made no further reports of chest pain, shortness of breath, or other issues on June 22, 23, or 24. She stated that she could not predict whether the results of a complete medical assessment on June 22 would have yielded normal or abnormal results, but she suspected that the results would have been abnormal. But she testified that she did not have an opinion as to what a medical "workup" on June 22 would have shown.

The district court received the deposition testimony of Joyce Black, a registered nurse with a Ph.D. in nursing who both parties used as an expert witness. Ewers' counsel conducted direct examination for Black's deposition, and Appellees' counsel cross-examined her.

Black testified that she instructs graduate students on the subject of pulmonary embolism. To prepare for her testimony, Black reviewed records from the Saunders County jail; records of Ellis' emergency room visits, autopsy and forensic toxicology report, and death certificate; narratives of events from jail personnel; and the Nebraska State Patrol investigative report.

Black explained that a blood clot, or embolus, can form, perhaps in the leg, and that a piece of the clot can break off and travel through the body until it becomes lodged in a lung (a pulmonary embolism). As a result, the clot will then block the flow of blood and oxygen to the tissue beyond the clot, and that tissue stops functioning. She testified that "[e]arly diagnosis is better in all cases because you want to stop the extension and additional clots from forming, and you do that with anti-coagulation." But Black also stated

that even with early treatment, not all pulmonary embolisms are survivable.

Black further explained that the body mounts an inflammatory response to a pulmonary embolism. According to Black, the pain is "exquisite" or "excruciating" and does not go away. Black testified that the pain continues during the entire inflammatory response, which lasts about 72 hours. Black testified that in addition to excruciating pain, someone dying of a pulmonary embolism would experience the sensation of difficulty breathing and possibly the feeling of impending doom. She testified that once blood flow is completely blocked, a patient would remain conscious for less than 1 minute.

Black testified that surgeons would remove saddle emboli, the type that Ellis suffered, only when such emboli are positioned a certain way and that even then, there was a risk that the clot would break during surgery and kill the patient. She described having a patient's family say goodbye prior to surgery because "that's how uniformly fatal that particular embolus is."

Based on Ellis' history; his complaint on June 22, 2010; and the absence of additional complaints until June 25, Black offered her opinion that there was no pulmonary embolus on June 22. Black testified with "reasonable medical certainty" that an examination on June 22 would not have shown that Ellis was having a medical issue or a pulmonary embolism. She stated that if Ellis had experienced a pulmonary embolism on June 22, his condition would have worsened on June 22, 23, and 24. According to Black, based on Ellis' history of anxiety, it was not problematic for Reeves not to examine him on June 22.

Upon examination by Ewers' counsel, Black agreed that if, hypothetically, Ellis had a pulmonary embolism on June 22, 2010, then Reeves, hypothetically, should have examined him. She also agreed that if Ellis had a pulmonary embolism on June 22 and had been treated for it, his chances of recovery would have been higher. Black emphasized, however, that in

her opinion, Ellis did not suffer a pulmonary embolism on June 22.

The district court granted the motion for summary judgment, finding no material issue of fact as to causation. It found that there was no expert testimony establishing a causal link between the acts of Reeves and Scherling and injuries or damages suffered by Ellis or Ewers. Specifically, the district court discerned no evidence that Ellis suffered a pulmonary embolism on June 22, 2010, or that an examination of Ellis on June 22 would have identified the presence of a pulmonary embolism on that date. It expressly rejected Ewers' argument that Black's response to a hypothetical question, that early detection of a pulmonary embolism on June 22 could have helped Ellis if he suffered from such condition on that day, was sufficient to show causation, because Black did not subscribe to the version of the facts presented in the hypothetical question.

Ewers now appeals the order granting summary judgment.

## Discovery

In addition to challenging the summary judgment, Ewers assigns errors pertaining to the discovery process and Appellees' alleged failure to timely and properly respond to requests for admission, requests for production, and interrogatories.

On April 8, 2014, Ewers filed a motion to compel discovery, which alleged that Appellees had provided "[i]mproper and/or inadequate" responses to certain requests for admission, requests for production, and interrogatories, purportedly "Sent 11-20-13."

On April 21, 2014, the district court sustained the motion and gave Appellees another opportunity to answer Ewers' "11-20-13" discovery. Ewers claims that the district court allowed Appellees 2 weeks to provide its answers.

On July 16, 2014, Ewers filed a motion to deem requests for admission admitted and to dismiss Appellees' answer, regarding "11-20-13" discovery. Ewers contended that Appellees had not provided the answers required by the district court's

previous order. On August 18, 2014, the district court ordered that supplemental answers and admissions be provided by August 25 or be deemed admitted.

On September 16, 2014, Ewers filed an amended motion to deem requests for admission admitted and to dismiss Appellees' answers, regarding the discovery for ACH, Reeves, and Scherling on November 13, 2013, and March 27 and April 9, 2014. She alleged that Appellees failed to comply with the district court's previous order because they had not submitted their responses to the requests for admission by August 25, 2014, and alleged such responses were improper. Further, she alleged that Appellees had provided untimely and insufficient responses to other requests for admission and no response to her other requests for documents and interrogatories. Following a hearing on September 16, 2014, the district court found that there was not sufficient evidence to ascertain the degree to which the requests were incomplete or had been or not been complied with. Given this, the district court made no ruling on the timeliness of the admissions.

On September 25, 2014, Ewers filed a motion to deem requests for admission admitted and to dismiss Appellees' answer, regarding the same discovery as the previous motion. Following a hearing, Ewers filed an "Explanation of Discovery Responses From Defendants," which alleged that Appellees had failed to comply with previous court orders to provide discovery responses and Black's expert report, or allow Ewers to depose Jessica Young, an attorney for ACH. On October 27, the district court's pretrial order stated, "Rule 37 request to be responded to within 30 days. Court will address the issue of imposition of costs as the result of the delay in discovery at time of trial."

On December 5, 2014, Ewers filed a motion to deem requests for admission admitted and to dismiss defendant's answer, again regarding the same discovery as the previous motion. On December 17, the district court noted that the record had become "voluminous and confusing" and that "it is difficult, if not impossible for the court to ascertain what

has and has not been requested and what has and what has not been appropriately answered." It ordered the parties to submit all discovery disputes to the district court in a specific outline format and to meet and discuss the outline in advance of the next hearing. The district court attached an outline form for the parties to fill in and provided explicit instructions on how to do so.

On February 11, 2015, Ewers filed a motion to compel "B" discovery or, in the alternative, dismissal of Appellees' answer, which concerned Appellees' responses to requests for admission and interrogatories. A hearing was held on February 23. Ewers used a paragraph format to summarize the litigation and did not comply with the outline format required by the district court's previous order, claiming at the hearing that the issues were too complex for an outline format. On February 25, the district court ruled that all discovery matters not presented in the format it had ordered were waived. However, the district court did order that all interrogatories must be signed under oath within 10 days.

Appellees subsequently submitted responses to interrogatories signed under oath by Sherri Miller, not Young, who had previously signed the responses, but not under oath.

On April 3, 2015, Ewers filed an "Amended Motion to Compel 'B' Discovery or . . . Dismissal of Defendants' Answers and/or . . . Hold Defendants in Contempt and/or . . . Disqualify Defendants' Counsel for a Conflict of Interests." The motion stated that Appellees' counsel had committed repeated and intentional violations of court and ethical rules. On April 14, the district court denied all relief requested by Ewers' motion.

On November 30, 2016, following the sua sponte recusal of the initial judge, Ewers filed a motion to dismiss Appellees' answers or, in the alternative, to deem requests for admission admitted. The motion alleged that Appellees had repeatedly refused to answer discovery requests, comply with orders of the court regarding discovery, and timely answer requests for admission. On December 30, with a new judge presiding, the

district court overruled the motion, finding the district court's previous orders were the law of the case. Regarding discovery documents now addressed on appeal, it observed that Ewers had refused to use the outline format ordered by the previous judge. The district court further noted that all prior motions to deem requests for admission admitted or dismiss Appellees' answers were denied by the district court and that Ewers had failed to show a fundamental change or that the earlier orders were erroneous. In addition to denying Ewers' latest motion, the district court ruled that it was frivolous and granted Appellees attorney fees of $500.

On January 27, 2017, the district court made a journal entry memorializing that Ewers had been given 10 days to pay the $500 attorney fees pursuant to the December 30, 2016, order.

Ewers now appeals the order dated December 30, 2016, and the journal entry dated January 27, 2017.

## ASSIGNMENTS OF ERROR

Ewers assigns, renumbered and restated, that the district court erred in (1) failing to correctly apply the law by not deeming the request for admission as admitted, failing to impose Neb. Ct. R. Disc. § 6-337 sanctions on Appellees for failure to follow Nebraska Court Rules of Discovery in Civil Cases, such as dismissing the answer of Appellees; (2) failing to find there is a genuine issue of material fact in this case and granting Appellees' motion for summary judgment; and (3) failing to find that Reeves was also the proximate cause of Ellis' pain and suffering.

## STANDARD OF REVIEW

[1,2] Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id*.

[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *White v. Busboom*, 297 Neb. 717, 901 N.W.2d 294 (2017).

## ANALYSIS

### Discovery

Over the course of the litigation, Ewers filed several motions to compel discovery, to impose sanctions, to deem her requests for admission admitted, and to dismiss Appellees' answers, all of which the district court denied. Now on appeal, Ewers claims that the district court erroneously applied the law by not deeming her requests for admission admitted and by declining to impose § 6-337 sanctions on Appellees for failure to follow Nebraska Court Rules of Discovery in Civil Cases.

[4,5] Ewers correctly notes that the Nebraska Supreme Court rules relating to discovery provide that a party may serve on another party written requests for admission and that unless answered, objected to within 30 days after service, or requested to be withdrawn, the requests are deemed admitted. See Neb. Ct. R. Disc. § 6-336. We have held that a party's failure to make a timely and appropriate response to a request for admission constitutes an admission of the subject matter of the request, which matter is conclusively established unless, on motion, the court permits withdrawal of the admission. *Tymar v. Two Men and a Truck*, 282 Neb. 692, 805 N.W.2d 648 (2011). We have recognized that § 6-336 is self-enforcing, without the necessity of judicial action to effect an admission which results from a party's failure to answer or object to a request for admission. *Tymar v. Two Men and a Truck, supra.*

[6,7] We have noted, however, that § 6-336 is not self-executing. *Tymar v. Two Men and a Truck, supra.* Thus, a party

that seeks to claim another party's admission, as a result of that party's failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer or object to the request and must also offer the request for admission as evidence. *Id.* If the necessary foundational requirements are met and no motion is sustained to withdraw an admission, a trial court is obligated to give effect to the provisions of § 6-336 which require that the matter be deemed admitted. *Tymar v. Two Men and a Truck, supra*.

In her reply brief, Ewers points to several exhibits and argues that the record reflects compliance with the prerequisites to deem requests for admission admitted pursuant to § 6-336. One exhibit cited is an affidavit from counsel for Ewers verifying the accuracy of several exhibits and purporting to verify delivery of discovery. The affidavit states in part, "Exhibit 73, Delivery to ACH, 11/20/13." Exhibit 73 itself was not attached to the affidavit. Exhibit 73, along with other exhibits in the record referenced by Ewers, contains the front page of Ewers' request for admission and the responses from ACH. These exhibits do not contain, as required, a complete copy of the request for admission or a copy of any certificate of service (notice of service) that would have been completed in conjunction with the admissions. As the district court specifically pointed out, this lack of evidence prevented it from ruling on Ewers' motions, and it ultimately resulted in the district court's requesting that Ewers set forth her requested discovery and any alleged failure to respond in a format that the district court could use in its determination. Ewers, however, failed to comply with the order. Consequently, we find no abuse of discretion by the district court in declining to impose sanctions or to deem Ewers' requests for admission admitted by Appellees.

## SUMMARY JUDGMENT

Ewers assigns that the district court erred in granting Appellees' motion for summary judgment. As the parties

moving for summary judgment, Appellees had the burden to show that no genuine issue of material fact exists and to produce sufficient evidence to demonstrate that they were entitled to judgment as a matter of law. See *Barnes v. American Standard Ins. Co. of Wis.*, 297 Neb. 331, 900 N.W.2d 22 (2017). In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted and give that party the benefit of all reasonable inferences deducible from the evidence. *White v. Busboom*, 297 Neb. 717, 901 N.W.2d 294 (2017).

[8,9] Here, the substantive issue is whether there is a genuine issue of material fact that Appellees committed medical malpractice when treating Ellis at the jail. Currently, in Nebraska, in a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was a proximate cause of the plaintiff's alleged injuries. *Cohan v. Medical Imaging Consultants*, 297 Neb. 111, 900 N.W.2d 732 (2017). In the medical malpractice context, the element of proximate causation requires proof that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff. *Id*.

Ewers claims that Halstead's expert opinion, that a medical examination should occur when someone is complaining of chest pain or shortness of breath, is sufficient proof of the standard of care. Therefore, Ewers contends that Reeves should have examined Ellis in person on June 22, 2010, and that without such an examination or admission to the hospital on June 22, a breach of the standard of care occurred. On our review, we give Ewers the benefit of this inference that the standard of care had been breached by Appellees. See *White v. Busboom, supra*.

[10-12] However, a defendant's negligence is not actionable unless it is a proximate cause of the plaintiff's injuries or is a cause that proximately contributed to them. *Hamilton*

*v. Bares*, 267 Neb. 816, 678 N.W.2d 74 (2004). A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. *Radiology Servs. v. Hall*, 279 Neb. 553, 780 N.W.2d 17 (2010). A defendant's conduct is a proximate cause of an event if the event would not have occurred but for that conduct, but it is not a proximate cause if the event would have occurred without that conduct. *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007). Appellees assert that there was no expert testimony in this record, from anyone qualified to render a medical opinion, that the breach of the standard of care by Reeves on June 22, 2010, was causally connected to the fatal pulmonary embolism suffered by Ellis on June 25. We agree.

To support her position, Ewers points to Halstead's testimony. Although Halstead opined that Reeves breached the standard of care, she did not causally connect Reeves' failure to examine Ellis in person on June 22, 2010, to his fatal pulmonary embolism on June 25, nor did she opine that such an examination would have resulted in a different outcome. In other words, Halstead offered no testimony showing causation.

Ewers also relies on Black's statement that "[e]arly diagnosis is better in all cases because you want to stop the extension and additional clots from forming, and you do that with anti-coagulation." She argues that this evidence translates into causation pursuant to *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010). In *Richardson*, we held that an expert's opinion that the outcome would have been different had a patient, who died of necrotizing hemorrhagic pancreatitis, earlier received intravenous fluids was sufficiently akin to a degree of medical certainty and was sufficient to establish causation for purposes of a medical malpractice case. In so holding, we reiterated the principle that expert opinion is to be judged in view of the entirety of the expert's opinion and is not validated or invalidated solely on the basis of the presence or

lack of the magic words "'reasonable medical certainty.'" *Id.* at 405, 787 N.W.2d at 243.

In countering, Appellees note that Black's statement that "[e]arly diagnosis is better in all cases . . ." does not prove causation because it was a general medical opinion taken out of context. Appellees further assert that Ewers is misguided in relying on Black's hypothetical opinion that if Ellis had been examined on June 22, 2010, and if a nonfatal pulmonary embolus had been discovered on that date, his chances of recovery would have been higher. As Black emphasized in her testimony, the facts in Ellis' case were different from the facts posed in the hypothetical question. In addition, Black opined that Ellis did not experience a pulmonary embolus on June 22, because he did not complain of any pain from June 22 to 25 and had himself advised medical staff of his history of anxiety-related chest pain. Black stated that if Ewers had actually suffered a pulmonary embolus on June 22, his condition would have worsened from that point forward to June 25. And the facts here show that after reporting his symptoms on June 22, Ellis did not complain of pain again until June 25.

[13] Expert testimony is almost always required to prove proximate causation. *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008). In the absence of expert testimony on causation, the finder of fact would be left to resort to guess, speculation, or conjecture as to the issue. See *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000) (burden of proving cause of action is not sustained by evidence from which jury can arrive at its conclusions only by guess, speculation, conjecture, or choice of possibilities; there must be something more which would lead a reasoning mind to one conclusion rather than to another). Our previous cases discussing the sufficiency of expert opinions in a medical malpractice case have held that expert medical testimony based on "could," "may," or "possibly" lacks the definiteness required to meet the claimant's burden to prove

causation. See, e.g., *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). As we have observed:

> Our well-known preference for the use of the phrases "reasonable degree of medical certainty" or "reasonable degree of probability" is an indication to courts and parties of the necessity that the medical expert opinion must be stated in terms that the trier of fact is not required to guess or speculate at the cause of the injury.

*Id*. at 121, 541 N.W.2d at 643. Here, Black's answer to a hypothetical question assuming facts not present does not rise to the level of certainty required and would invite the trier of fact to speculate. Therefore, Black's testimony on early diagnosis being beneficial did not establish causation as argued by Ewers. But whether Black, a registered nurse, could render an opinion on medical causation was not raised as an issue in this case, and we make no comment thereon.

Ewers further claims that Appellees withheld an email from Black which may have affected her opinions. However, Ewers took Black's deposition, apparently did not provide her the email during the deposition, but ultimately named Black as her expert even though Black had not seen the email. Under these circumstances, Ewers had the opportunity to question Black about the email and could have supplemented her deposition or other discovery. Therefore, this argument has no merit.

In sum, even giving Ewers the benefit of every reasonable inference, without any expert testimony showing that Appellees' actions were the proximate cause of the fatal pulmonary embolism suffered by Ellis on June 25, 2010, or were a cause that proximately contributed to it, the district court correctly found that there was no genuine issue of material fact as to causation and that Appellees were entitled to judgment as a matter of law.

Lastly, Ewers claims that the district court erred in failing to find that Reeves was also the proximate cause of Ellis' pain and suffering. Ewers argues that Black's description of the pain inflicted by an embolus traveling through a patient's

lung established proximate cause. However, this argument also fails due to the absence of expert testimony establishing a causal connection between Reeve's conduct on June 22, 2010, and the pulmonary emboli on June 25. Evidence of the pain Ellis suffered on June 25 would apply to damages, not causation. Therefore, this assignment of error is without merit.

## CONCLUSION

For the reasons stated above, we conclude that the district court did not abuse its discretion in declining to deem Ewers' requests for admission admitted, to dismiss Appellees' answers to discovery, and to sanction Appellees. Further, finding no genuine issue of material fact as to causation, we conclude that the district court did not err in granting Appellees' motion for summary judgment. We affirm.

AFFIRMED.

WRIGHT, J., not participating.