Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/28/2021 08:10 AM CDT

Rosa Gonzales and Javier Rojas, individually
and as parents and next friends of Joaquin
Rojas, a minor, appellants, v. Nebraska
Pediatric Practice, Inc., and Corey
S. Joekel, M.D., appellees.

___ N.W.2d ___

Filed March 5, 2021.    No. S-20-253.

1. **Courts: Expert Witnesses.** A trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion.
2. ____: ____. An evaluation under *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), generally consists of four factors, including a determination of (1) whether the witness is qualified to testify as an expert, (2) whether the witness' testimony is supported by scientifically valid and reliable methodology or reasoning, (3) whether the reasoning or methodology has been properly applied to the facts in issue, and (4) whether the testimony's probative value is not substantially outweighed by danger of unfair prejudice.
3. **Judgments: Appeal and Error.** For purposes of a law-of-the-case analysis, construction of an appellate court's prior opinion is determined by an appellate court as a matter of law.
4. ____: ____. An appellate court reviews matters of law de novo, independently of the lower court's determination.
5. **Summary Judgment: Appeal and Error.** An appellate court reviews a grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
6. ____: ____. An appellate court affirms a grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

7. **Actions: Appeal and Error.** Law of the case is a procedural doctrine that bars reconsideration of the same or similar issues at successive stages of the same suit or prosecution.

8. \_\_\_\_ : \_\_\_\_. The law-of-the-case doctrine reflects the principle that to promote finality and to protect parties' settled expectations, an issue litigated and terminally decided in one stage of a case should not be later resuscitated at a later stage.

9. **Appeal and Error.** Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it for review become the law of the case.

10. \_\_\_\_. Under the law-of-the-case doctrine, unless the facts presented on remand are shown by the petitioner to be materially and substantially different, an appellate court's prior holdings conclusively settle all matters ruled upon, either expressly or by necessary implication.

11. **Pretrial Procedure: Expert Witnesses.** An objection under *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), must take the form of a concise pretrial motion.

12. \_\_\_\_ : \_\_\_\_. In terms of the factors under *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), a motion to exclude should identify what is believed to be lacking with respect to the expert testimony at issue.

13. \_\_\_\_ : \_\_\_\_. A motion to exclude expert testimony should be stated with enough specificity as to a particular factor that the court understands what is being challenged and can accordingly determine the necessity and extent of any pretrial proceedings.

14. **Expert Witnesses: Proof.** It is the objecting party's burden to raise an adequately specific objection to expert testimony.

15. **Expert Witnesses: Waiver.** A failure to make an adequately specific objection to expert testimony will result in a waiver of the right to object on that basis.

16. **Appeal and Error.** For purposes of a law-of-the-case analysis, it is enough for an appellate court to recognize the scope of issues conclusively settled in the appellate court's prior opinion.

17. \_\_\_\_. An appellate court interprets the scope of an appellate court's prior opinion as a matter of law without regard to the parties' or even the prior appellate court's subjective interpretations.

18. \_\_\_\_. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Reversed and remanded for further proceedings.

Greg Garland, of Garland Medmal, L.L.C., Tara DeCamp, of DeCamp Law, P.C., L.L.O., and Kathy Pate Knickrehm for appellants.

Sarah M. Dempsey, Patrick G. Vipond, and Michael L. Storey, of Lamson, Dugan & Murray, L.L.P., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

Appellants Rosa Gonzales and Javier Rojas are the parents of Joaquin Rojas, a minor who suffered a brain injury. Alleging that Joaquin's brain injury was caused by Dr. Corey Joekel, M.D., when he misdiagnosed and failed to treat Joaquin's condition, appellants brought a malpractice action against appellees Joekel and his employer, Nebraska Pediatric Practice, Inc.

Based on appellees' objection, the district court found the expert testimony of appellants' key witness inadmissible. After excluding that testimony, the district court granted summary judgment to appellees.

For the reasons set forth herein, we reverse the district court's order granting summary judgment and remand the cause for further proceedings consistent with this opinion.

## II. BACKGROUND

### 1. Complaint

On August 5, 2012, Joaquin, who was then 5 years old, was exhibiting symptoms consistent with mononucleosis, a common condition frequently caused by the Epstein-Barr virus (EBV). Gonzales brought Joaquin to the emergency department at Children's Hospital and Medical Center (CHMC) in Omaha, Nebraska. After an examination, an emergency department physician diagnosed Joaquin with mononucleosis and discharged him.

Over the next 2 days, Joaquin continued to exhibit many of the same symptoms. Concerned that some of Joaquin's

symptoms might be worsening, Gonzales returned Joaquin to the emergency department at CHMC the morning of August 7, 2012. Joekel, the attending emergency department physician, examined Joaquin and diagnosed him with mononucleosis. Joekel ordered Joaquin discharged at 8:44 a.m.

Approximately 3½ hours later, Joaquin began to seize. Gonzales called the 911 emergency dispatch system, and Joaquin was transported by ambulance to the University of Nebraska Medical Center (UNMC) in Omaha. At 12:39 p.m., Joaquin was admitted to the emergency department at UNMC. He was unresponsive and exhibiting decreased respirations. After UNMC staff administered antiepileptic medication, Joaquin began to gradually regain consciousness. Joaquin was diagnosed with EBV meningoencephalitis, a serious infection of the brain and surrounding tissue that can arise as a complication of mononucleosis.

Joaquin also experienced brain swelling and oxygen loss. On August 10, 2012, surgeons at UNMC performed a decompressive craniectomy, removing sections of Joaquin's skull to relieve pressure on his brain. On September 5, UNMC surgeons performed a cranioplasty to replace the sections of Joaquin's skull that they had removed.

On September 10, 2012, Joaquin was transferred to a rehabilitation center for physical and speech therapy. He was discharged home on October 13. Joaquin's parents allege that when Joaquin then attended school, he displayed symptoms of a brain injury, including learning deficits that required his placement in special education classes.

On August 1, 2014, appellants filed a complaint in the district court for Douglas County, asserting that Joaquin's injuries were attributable to Joekel's professional negligence. On behalf of themselves and Joaquin, appellants sought damages from appellees under the Nebraska Hospital-Medical Liability Act.[1]

---

[1] Neb. Rev. Stat. §§ 44-2801 to 44-2855 (Reissue 2010).

## 2. First Appeal

As the case progressed toward trial, a dispute arose concerning the admissibility of certain expert testimony. Pursuant to Neb. Rev. Stat. § 27-702 (Reissue 2016), appellants moved to admit the testimony of Dr. Todd Lawrence, a family and emergency room physician, "on all elements of proof required to prove a prima facie case of medical malpractice." Lawrence planned to opine that Joaquin's medical outcome would have been better if, on August 7, 2012, Joekel would not have misdiagnosed Joaquin and failed to admit him for further treatment at CHMC.

Appellees moved to prevent Lawrence from testifying to this opinion. Their basis for objecting to Lawrence's testimony was, in part, *Schafersman v. Agland Coop* (*Schafersman I*),[2] the case in which we adopted the framework set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[3] and its progeny[4] for evaluating whether to admit expert testimony.

[1,2] Under our *Schafersman I* jurisprudence, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion.[5] A *Schafersman I* evaluation generally consists of four factors, including a determination of (1) whether the witness is qualified to testify as an expert, (2) whether the witness' testimony is supported by scientifically valid and reliable methodology or reasoning, (3) whether the reasoning or methodology has been properly applied to the facts in issue, and (4) whether the testimony's

---

[2] *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

[3] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[4] See, e.g., *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

[5] See *Schafersman I, supra* note 2. See, also, *State v. Simmer*, 304 Neb. 369, 935 N.W.2d 167 (2019).

probative value is not substantially outweighed by danger of unfair prejudice.[6]

Appellees also moved for summary judgment, claiming that without Lawrence's testimony, appellants could not prove causation, an essential element in a medical malpractice case.[7]

After an evidentiary hearing, the district court agreed with appellees that Lawrence's testimony was inadmissible. The court excluded the testimony on two bases: first, that under *Schafersman I*, Lawrence was unqualified to testify about causation as an expert; and second, that under our line of cases concerning the relevance of expert testimony,[8] Lawrence's opinions amounted to inadmissible loss-of-chance testimony. In a separate order, the district court granted appellees' motion for summary judgment.

On the first appeal of this case, the Nebraska Court of Appeals affirmed in part, and in part reversed and remanded for further proceedings.[9] All three of the panel's judges agreed that a portion of Lawrence's opinions amounted to loss-of-chance testimony, "which, in Nebraska, is insufficient to establish causation."[10]

Yet as to the portion of Lawrence's opinions that the court found was not loss-of-chance testimony, the panel divided on whether Lawrence was qualified to render such opinions. After a thorough analysis applying the relevant *Schafersman I* factors, a majority of the Court of Appeals concluded that

---

[6] See *Epp v. Lauby*, 271 Neb. 640, 715 N.W.2d 501 (2006). See, also, *Simmer, supra* note 5.

[7] See *Ewers v. Saunders County*, 298 Neb. 944, 906 N.W.2d 653 (2018).

[8] See, e.g., *Cohan v. Medical Imaging Consultants*, 297 Neb. 111, 900 N.W.2d 732 (2017), *modified on denial of rehearing*, 297 Neb. 568, 902 N.W.2d 98; *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010); *Rankin v. Stetson*, 275 Neb. 775, 749 N.W.2d 460 (2008).

[9] See *Gonzales v. Nebraska Pediatric Practice*, 26 Neb. App. 764, 923 N.W.2d 445 (2019).

[10] *Id.* at 786, 923 N.W.2d at 461.

Lawrence was qualified and that therefore, the district court had abused its discretion in excluding Lawrence's testimony,[11] with one judge concurring in part, and in part dissenting.[12] The Court of Appeals then remanded the cause "for further proceedings in compliance with [its] opinion."[13]

### 3. Orders on Remand

On remand, appellees renewed their objection that Lawrence's testimony was inadmissible under *Schafersman I.* They moved to amend the scheduling order to name an additional expert witness, Dr. Daniel Bonthius, a neurologist and pediatrician who specialized in viral encephalitis.

Then, supported by live video testimony from Bonthius, affidavits from two other physicians who specialized in pediatric epilepsy and infectious disease, and three articles from medical journals, appellees challenged Lawrence's testimony under the second and third *Schafersman I* factors. To wit, appellees contended that Lawrence's testimony would depend on invalid "methods or scientific knowledge" and would not properly apply valid methods or reasoning to the facts in issue. Further, on the condition that their motion to exclude Lawrence's testimony was granted, appellees moved again for summary judgment.

At a hearing on appellees' motions, appellants objected to the form of Bonthius' testimony. But because appellees had provided nearly 4 months' notice of their intent to offer Bonthius' testimony by live video, and because appellants had only begun objecting to Bonthius' testimony in that form on the day before the hearing, the district court concluded that appellants had "implicitly agreed" to such testimony by their conduct. The district court thus received Bonthius'

---

[11] See *Gonzales, supra* note 9.

[12] But see *id.* (Bishop, Judge, concurring in part, and in part dissenting).

[13] *Id.* at 799, 923 N.W.2d at 468.

testimony by live video pursuant to Neb. Rev. Stat. § 24-734(4) (Reissue 2016).[14]

The district court then granted appellees' motion to exclude Lawrence's testimony from trial. Despite finding that Lawrence was qualified as a physician and entitled to give "medical opinions," the district court found that his testimony "with regard to the causation of seizures and the extent and longevity thereof are not within his skill set and[,] based on the testimony of [Bonthius], are not consistent with current medical knowledge in the area." Accordingly, the district court ordered that "causation opinions regarding any relationship between [EBV meningoencephalitis] and seizures offered by Dr. Lawrence must be stricken." Because appellants' argument for causation depended for support on Lawrence's testimony, the district court also granted summary judgment to appellees.

Appellants filed a timely notice of appeal.[15] While the appeal was pending, appellees requested a supplemental bill of exceptions containing the records from two hearings. The court reporter averred that she was unable to produce a record for one of the hearings because no stenographic record had been made.

Appellees moved for an order nunc pro tunc to augment the bill of exceptions with an affidavit from their attorney that had allegedly been received at that hearing but not included in the record. Finding that the affidavit had been properly received as evidence but "inadverten[tly]" left out of the record due to "clerical error" by the court reporter, the district court granted appellees' motion and ordered the affidavit included in the bill of exceptions.

We moved the appeal to our docket.[16]

---

[14] See, also, 2020 Neb. Laws, L.B. 912 (codified as § 24-734 (Cum. Supp. 2020), amending § 24-734(4) after relevant time in this case).

[15] See Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2020).

[16] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

## III. ASSIGNMENTS OF ERROR

Appellants assign three errors, which we restate as follows: (1) that the district court was precluded, under the law of the case, from excluding the testimony of their expert, Lawrence; (2) that the district court violated the law of the case, *Schafersman I*, and § 24-734(4) in admitting the testimony of appellees' experts; and (3) that the district court erred in granting summary judgment.

## IV. STANDARD OF REVIEW

[3,4] For purposes of a law-of-the-case analysis, construction of an appellate court's prior opinion is determined by an appellate court as a matter of law.[17] An appellate court reviews matters of law de novo, independently of the lower court's determination.[18]

[5,6] An appellate court reviews a grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[19] An appellate court affirms a grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[20]

## V. ANALYSIS

### 1. Preclusion Under Law of Case

We begin our analysis by considering the district court's decision to exclude Lawrence's testimony. Appellants contend that the Court of Appeals' earlier opinion in this case conclusively settled that Lawrence's testimony was admissible.

---

[17] See *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020).

[18] See *id.*

[19] *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020).

[20] *Id.*

Thus, they allege, the law of the case precluded appellees' renewed *Schafersman I* objection on remand to Lawrence's testimony.

[7,8] Law of the case is a procedural doctrine that bars reconsideration of the same or similar issues at successive stages of the same suit or prosecution.[21] The doctrine reflects the principle that to promote finality and to protect parties' settled expectations, an issue litigated and terminally decided in one stage of a case should not be later resuscitated at a later stage.[22]

[9,10] Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it for review become the law of the case.[23] Thereafter, unless the facts presented on remand are shown by the petitioner to be materially and substantially different, the appellate court's holdings conclusively settle all matters ruled upon, either expressly or by necessary implication.[24]

Here, we agree with appellants that the admissibility of Lawrence's testimony was conclusively settled by the Court of Appeals and that therefore, appellees' renewed objection on remand to that testimony was precluded. Among the questions presented to the Court of Appeals for review were whether Lawrence's opinions had met the requirements for reliability and relevance under *Schafersman I* to be admissible as expert testimony "on the subject of causation of Joaquin's injuries."[25]

After thoroughly analyzing Lawrence's testimony against the relevant factors, the Court of Appeals answered in the affirmative:

---

[21] See *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

[22] See *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). See, also, *State v. Thompson*, 69 Neb. 157, 95 N.W. 47 (1903).

[23] See *Price, supra* note 21.

[24] See *id.* See, also, *Carpenter v. Cullan*, 254 Neb. 925, 581 N.W.2d 72 (1998).

[25] *Gonzales, supra* note 9, 26 Neb. App. at 783, 923 N.W.2d at 460.

Dr. Lawrence clearly possesses special knowledge respecting the causation of brain injury and scarring from seizures superior to that of persons in general as to make his formation of a judgment a fact of probative value. . . . If [a]ppellees have more specialized experts and evidence to attack Dr. Lawrence's conclusions, [a]ppellees remain capable of cross-examining Dr. Lawrence and bringing their own experts and evidence to counter his opinions. However, this becomes a question of fact for the fact finder.[26]

Thus, the Court of Appeals held that the district court had "abused its discretion in determining that Dr. Lawrence was unqualified under § 27-702 to testify on causation as to the injuries Joaquin suffered due to Dr. Joekel's failure to hospitalize, treat, and control Joaquin's seizure, the sole causation opinion offered by Dr. Lawrence . . . ."[27]

That holding by the Court of Appeals established the law of the case. It conclusively settled that under *Schafersman I,* Lawrence's testimony was admissible to prove causation in this case.

Because Bonthius' testimony is nothing more than a new opinion concerning facts that already existed before remand, it does not qualify as a material and substantial difference in the facts underlying the Court of Appeals' decision such that it should displace the application of the law-of-the-case doctrine.[28] And unlike expert testimony in a retrial, which we have said is not necessarily precluded by foundational challenges raised before,[29] Lawrence's opinions on remand are essentially the same as those the Court of Appeals considered previously. At the least, appellees have failed to show

---

[26] *Id.* at 794, 923 N.W.2d at 465-66.

[27] *Id.* at 795, 923 N.W.2d at 466.

[28] See *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998).

[29] See *State v. Davlin*, 272 Neb. 139, 719 N.W.2d 243 (2006).

a material and substantial difference.[30] Therefore, under the Court of Appeals' opinion, appellees were precluded from renewing, on remand, their *Schafersman I*-based objections to Lawrence's testimony.

Appellees urge us to parse the scope of the Court of Appeals' opinion more narrowly. By appellees' reading, the opinion settled only one issue under *Schafersman I*—Lawrence's qualifications—and did not reach the separate *Schafersman I* issues of whether Lawrence's testimony was supported by scientifically valid methodology and whether it properly applied such methodology to the facts in issue.

Appellees cite language in the Court of Appeals' opinion that they claim "invited" objections based on these grounds after remand.[31] The Court of Appeals stated:

> [W]e express no opinion as to whether [Dr. Lawrence's] theory or methodology supporting the opinion are valid, whether the theory or methodology were properly applied to the facts in this case, or whether Dr. Lawrence's testimony is more probative or prejudicial. To the extent [a]ppellees were challenging those factors, those components of the *Daubert*/*Schafersman* analysis were not addressed by the district court in its order.[32]

But while we agree that by its express acknowledgment the Court of Appeals elected not to separately analyze those *Schafersman I* factors, we disagree that the factors remained subject to challenge on remand.

[11-15] As the Court of Appeals noted elsewhere in its opinion, a *Schafersman I* objection must take the form of a concise pretrial motion.[33] Such motion should identify, in terms of the *Schafersman I* factors, what is believed to be lacking with

---

[30] See *Carpenter, supra* note 24.

[31] Brief for appellees at 27.

[32] *Gonzales, supra* note 9, 26 Neb. App. at 795, 923 N.W.2d at 466.

[33] See *Gonzales, supra* note 9. See, also, *Simmer, supra* note 5.

respect to the expert testimony at issue.[34] It should be stated with enough specificity as to a particular factor that the court understands what is being challenged and can accordingly determine the necessity and extent of any pretrial proceedings.[35] It is the objecting party's burden to raise an adequately specific objection to expert testimony.[36] Because this specificity requirement is necessary to protect judicial economy and resources,[37] a failure to make an adequately specific objection to expert testimony will result in a waiver of the right to challenge that factor.[38]

Considering this established waiver rule, we are satisfied that it explains why the Court of Appeals declined to separately analyze the *Schafersman I* factors raised in appellees' renewed objection on remand.[39] After stating the waiver rule, the Court of Appeals found:

> It is unclear from the record whether [a]ppellees' [*Schafersman I*] challenge to Dr. Lawrence was limited to his qualifications to testify or whether [a]ppellees were extending their challenge to his theory or methodology and/or his application of the facts to his theory or methodology. See brief for appellees at 28 (arguing that Dr. Lawrence's opinions "were not sufficiently reliable"). We note the Nebraska Supreme Court's admonition that a *Daubert*/*Schafersman* challenge should specifically identify which of the factors is believed to be lacking. We also note this record is somewhat devoid of analysis as it relates to those other specific factors.[40]

---

[34] See *Simmer, supra* note 5.

[35] See *In re Interest of Christopher T.*, 281 Neb. 1008, 801 N.W.2d 243 (2011).

[36] See *id.*

[37] *State v. Herrera*, 289 Neb. 575, 856 N.W.2d 310 (2014).

[38] See, e.g., *Simmer, supra* note 5; *In re Interest of Christopher T., supra* note 35.

[39] *Gonzales, supra* note 9.

[40] *Id.* at 789, 923 N.W.2d at 463.

By finding "unclear" appellees' other *Schafersman I*-based objections in the record, the Court of Appeals determined that the objections had not been raised with adequate specificity.[41] According to the Court of Appeals, appellees' passing characterization of Lawrence's testimony as "'not sufficiently reliable'" was not an adequately specific objection.[42] We thus read the Court of Appeals' opinion as deciding that to the extent appellees had wished to challenge Lawrence's testimony on *Schafersman I* grounds beyond his alleged lack of qualifications, they had waived those challenges.

[16,17] We do not judge the merits of that decision here, because for purposes of our law-of-the-case analysis, it is enough for us to recognize the scope of issues conclusively settled in the Court of Appeals' opinion.[43] We interpret its scope as a matter of law without regard to the parties' or even the Court of Appeals' subjective interpretations.[44] It is that de novo interpretation of the opinion that leads us to conclude the Court of Appeals applied our waiver rule, thus precluding further challenges to Lawrence's testimony based not only on his qualifications but also on all other *Schafersman I* factors.

Our waiver rule may not have been the Court of Appeals' only justification for declining to analyze the *Schafersman I* factors raised in appellees' renewed objection on remand. The Court of Appeals also noted that under principles of judicial restraint, it could avoid analyzing those factors because the district court had not analyzed them, grounding its decision instead "solely on the basis of [Lawrence's] qualification to give such opinion."[45]

But regardless of how many justifications the Court of Appeals had for not analyzing the S*chafersman I* factors

---

[41] See *id.*

[42] See *id.*

[43] See *Price, supra* note 21.

[44] See, *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019). See, also, *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990).

[45] *Gonzales, supra* note 9, 26 Neb. App. at 789, 923 N.W.2d at 463.

raised in appellees' renewed objection on remand, what matters now is our finding that the waiver rule was among those justifications. By determining that appellees' qualification-based objection lacked merit, in part, and that their other *Schafersman I* objections had been waived, the Court of Appeals conclusively settled all of appellees' potential *Schafersman I*-based objections to Lawrence's testimony.

We consequently disagree with appellees' parsing of the Court of Appeals' opinion. Contrary to appellees' interpretation, the opinion was not an invitation to relitigate the admissibility of Lawrence's testimony. Nor was appellees' renewed objection fair game on remand. Under our de novo interpretation, the Court of Appeals' opinion ended the parties' pretrial dispute concerning the admissibility of Lawrence's testimony.

As the Court of Appeals observed, "[i]f [a]ppellees have more specialized experts and evidence to attack Dr. Lawrence's conclusions, [a]ppellees remain capable [at trial] of cross-examining Dr. Lawrence and bringing their own experts and evidence to counter his opinions."[46] But for purposes of this *Schafersman I* motion to exclude, appellees' renewed objection on remand to Lawrence's testimony was precluded under the law of the case.

Consistent with appellants' first assignment of error, we find that the district court's order excluding Lawrence's testimony was in error.

## 2. Summary Judgment

Appellants also raise various arguments for why the district court erred in admitting the testimony of appellees' experts.

[18] We need not reach those arguments here because an appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[47] Summary judgment in this case depended on appellants'

---

[46] *Id.* at 794, 923 N.W.2d at 466.

[47] See *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020).

failure to raise a genuine dispute as to the causation of Joaquin's injury, an essential element of their medical malpractice claim.[48] But because we reverse the order excluding Lawrence's testimony, that testimony is properly in the record and raises a genuine dispute about causation, regardless of appellees' evidence. Summary judgment was unwarranted.

## VI. CONCLUSION

The district court's order excluding Lawrence's testimony was in error. We reverse the district court's grant of summary judgment and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.

---

[48] See *Ewers, supra* note 7.