DONNA CARPENTER, PERSONAL REPRESENTATIVE OF THE ESTATE OF TODD ALAN CARPENTER, DECEASED, APPELLEE, V. DAVID J. CULLAN, APPELLANT.

581 N.W.2d 72

Filed July 2, 1998.    No. S-96-1148.

926

Joseph K. Meusey, Michael F. Coyle, and Travis S. Tyler, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

David A. Domina and Cletus W. Blakeman, of Domina & Copple, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

This is a legal malpractice action. Appellee, Donna Carpenter, initiated this suit in her capacity as personal representative of the estate of Todd Alan Carpenter (Carpenter), her son, against appellant, attorney David J. Cullan. This action was commenced by appellee after appellant failed to file a wrongful death suit on behalf of appellee within the applicable statute of limitations. The jury found in favor of appellee in the amount of $270,000. The parties stipulated that this was to be a bifurcated trial and that the trial court, upon a subsequent hearing, was to determine whether the entire verdict should be collected from appellant. The district court for Douglas County, Nebraska, determined that the entire $270,000 verdict was collectible from appellant. From this order, appellant filed an appeal, and we granted his petition to bypass the Nebraska Court of Appeals. We affirm.

## BACKGROUND

On the evening of August 6, 1988, Carpenter, age 16; Nancy Sue Mueller, age 15; and Scott Bridge (Bridge), age 15, attended a campout on the Edgar Bridge farmstead in Antelope County, Nebraska. Edgar Bridge is the father of Scott Bridge. At 12:31 a.m., Carpenter and Mueller informed the group that Mueller had a curfew and that they had to leave the party. At that time, Carpenter, Mueller, Bridge, and Cory Lyons, age 15,

walked to a Volkswagen pickup owned by Edgar Bridge located 30 to 40 yards from the campsite.

As Mueller and Lyons stood near the front of the pickup conversing, Carpenter entered the vehicle from the driver's side and shut the door. Carpenter and Bridge then began to argue about who should drive the vehicle. Bridge argued that he should drive the pickup because it was his, while Carpenter argued that he should drive because he had a driver's license. As the discussion between Carpenter and Bridge continued about who should drive the vehicle, Lyons departed and went back to the campsite. Lyons testified that about 10 minutes after he returned to the campsite, he heard the pickup drive down the road toward the highway. No one saw who was driving the pickup as it left the Bridge farm.

The pickup proceeded away from the campsite toward the county road. At a point about 15 miles from the Bridge farm on Compactor Road, the westbound pickup ran a stop sign and collided with a southbound 1977 Pontiac at the intersection of Compactor Road and Clearwater-Elgin Road. Mueller, Bridge, and Carpenter were all ejected from the pickup during the impact. Volunteer emergency fire and rescue personnel from Clearwater were first on the scene. The crew extinguished the flames of the burning pickup. While walking around the pickup, one of the firemen came upon the body of one of the youths. The crew provided medical assistance to the three unconscious youths before transporting them by ambulance to a hospital in Neligh. This activity occurred before law enforcement personnel arrived at the scene. Therefore, no photographs or measurements were taken of where the youths' bodies were located in relation to the pickup, roadway, or ditch. No evidence was preserved as to where the youths came to rest after the accident. As a result of the accident, Carpenter and Mueller died. Bridge sustained a severe brain injury and has no memory of the accident or who was driving.

Deputy Sheriff Darrell Hamilton of the Antelope County Sheriff's Department investigated the accident. Five days later, the Nebraska State Patrol arrived to assist with the investigation. None of these investigators were able to make a determination of who was driving the pickup prior to the accident.

Approximately 10 days after the accident, six or seven members of the fire and rescue squad prepared a diagram of the accident scene and the postimpact positions of the bodies of Bridge, Mueller, and Carpenter. Steven Hankla and Carla Jacob, two members of the rescue squad, each recalled that Carpenter was located the farthest west of the three youths.

After the death of her son, appellee retained appellant to investigate and file a wrongful death action. Appellant failed to commence an action before the expiration of the statute of limitations. Appellee subsequently brought this malpractice action against both appellant, as an individual defendant, and the law firm of Cullan & Cullan, as a partnership defendant. The action was dismissed by the trial court upon the defendants' motions for summary judgment. On appeal, the Court of Appeals found that there was no evidence which would support a finding of liability against the partnership defendant, and affirmed the motion for summary judgment of dismissal as to Cullan & Cullan. See *Carpenter v. Cullan*, 95 NCA No. 6, case No. A-93-097 (not designated for permanent publication). The Court of Appeals reversed the order granting the motion for summary judgment of appellant, finding that the determination of the identity of the driver of the pickup was a jury question and that the district court abused its discretion in specifically finding that the testimony of appellee's expert witness, George Lynch, should be stricken as a matter of law. The Court of Appeals remanded the cause for further proceedings. In response to appellee's amended petition, appellant had admitted he was negligent in failing to file the wrongful death action within the applicable statute of limitations, but alleged that his failure to file a wrongful death action for Carpenter was not a proximate cause of any damage to appellee. Appellant alleged that there was insufficient evidence regarding the identity of the driver of the pickup at the time of the accident and that appellant's negligence did not prevent appellee from obtaining or collecting any judgment for Carpenter's death.

In the appeal to the Court of Appeals of the dismissal of this case on appellant's motion for summary judgment, the Court of Appeals, with respect to Lynch's affidavit, found that Lynch had been engaged for 6 years by the Omaha City Attorney's office

as an accident consultant; that prior to that he had been an Omaha Police Division officer for 17 years, 13½ years of which had been as an accident investigator; that he had investigated over 500 fatal accidents and over 5,000 personal injury accidents; and that he was qualified to testify on the subject of accident reconstruction. The Court of Appeals further found that Lynch had relied upon the reports, photographs, and charts which were introduced into evidence on the motion for summary judgment to determine that when the vehicles collided, the force of the impact caused the front of the pickup to move suddenly in a lateral direction to the left, commencing a counter-clockwise rotation, and that during this rotation, the occupants of the pickup were thrown out the passenger-side door. This was based on the facts that the passenger-door lock was sheared off, the door was deformed from the inside, and the steering wheel was bent to the right. Lynch further opined that the rotation of the pickup forced the occupants' bodies against the passenger door, forcing it open; that damage to the door resulted from the force of their bodies pushing on the door; that the steering wheel was bent as a result of the driver's holding onto the wheel as he was forced toward the right-hand side; and that the occupants came out in the following order: Carpenter first, Mueller second, and Bridge third. Lynch finally opined that the seating arrangement of the youths in the pickup, from what he believed to be the order in which they were ejected through the right-hand door, was that the one on the right (Carpenter) came out first and that the one on the left (Bridge) came out last. Lynch said his opinions were made to a reasonable degree of scientific certainty. The Court of Appeals held that while ordinary laypersons might not have pieced together what happened, "once Lynch's opinion is explained, it is easy to follow his rationale. Lynch's opinion is understandable and reasonable." *Carpenter v. Cullan*, 95 NCA No. 6 at 15. The Court of Appeals concluded that on the state of the record, the determination of the driver of the pickup was a jury question. No further review was sought of the opinion of the Court of Appeals. Appellee contends that the holding by the Court of Appeals as to the admissibility of Lynch's testimony and opinions becomes the law of the case.

At trial on remand, Lynch testified as an expert witness for appellee as to his opinions regarding the identity of the driver of the pickup. Lynch testified that based upon factors of force and rotation, the violent rotation of the pickup created a left-to-right movement of the occupants within the cab. This movement forced the occupants against the right passenger door and, upon failure of the door latch, the passenger next to the door was forced out of the pickup first. Lynch opined that the first person ejected from the pickup would have been in the farthest west at-rest position in comparison with the at-rest positions of the other two occupants from the rotational pivot. Using this analysis, Lynch concluded that at the time of impact, Carpenter was positioned at the right-hand passenger door, Mueller was seated somewhere in the middle of the cab, and Bridge was the driver. Lynch also testified that his findings and opinions had not changed from those given in exhibit 87, a supplemental interrogatory answer written by appellee's attorney which disclosed appellee's endorsement of Lynch as an expert witness and briefly summarized Lynch's conclusions regarding the reconstruction of the accident. Appellee introduced this exhibit into evidence over appellant's objection on the grounds that it was cumulative.

Appellant moved for a directed verdict at the close of appellee's case in chief. The trial court denied this motion.

The trial court held, as a matter of law, that appellant was negligent in failing to timely file the wrongful death case, that the driver of the pickup had been negligent, and that Carpenter had been killed as a result of that negligence. The identity of the driver had to be determined by the jury. The jury returned a verdict in favor of appellee in the amount of $270,000. The jury found that Bridge, not Carpenter, had been driving the pickup at the time of the collision. Appellant moved for a new trial and a judgment notwithstanding the verdict. Both motions were denied.

The parties, by stipulation, agreed that the trial was to be bifurcated, with a separate hearing to be held to determine whether the negligence of appellant was the proximate cause of the entire sum of the damages found by the jury and whether the

judgment could have been collected from the original tort-feasor. At the collectibility hearing, the court found that appellee met her burden by showing that she would have been successful in obtaining and collecting a judgment in this action. The insurance coverages available to pay the verdict included a State Farm Insurance Company policy issued to the Bridge family covering the pickup, with coverage limits of $100,000 per person and $300,000 per occurrence, and an underinsured motorist policy issued to the Carpenter family by Farm Bureau Insurance Company of Nebraska, which provided coverage in the amount of $200,000 over and above the State Farm policy limit. The trial court, in this bifurcated hearing, determined that the insurance coverage would have provided a total of $300,000 for payment of the verdict and judgment and that therefore, the entire $270,000 was collectible from appellant. From this order, appellant appeals.

## ASSIGNMENTS OF ERROR

Appellant asserts that the trial court erred (1) in ruling that the $270,000 jury verdict was collectible by appellee; (2) in failing to sustain appellant's motion for a directed verdict, since there was insufficient evidence as to the identity of the driver of the pickup; (3) in receiving Lynch's opinion regarding the driver of the pickup over the objection of counsel; (4) in failing to strike the opinion of Lynch regarding the identity of the driver of the pickup because Lynch was not in possession of such facts to enable him to express an opinion not based on speculation; (5) in receiving exhibit 87 over the objection of counsel, since that exhibit was based upon hearsay and was cumulative; and (6) in failing to sustain appellant's motion for judgment notwithstanding the verdict and motion for new trial.

## STANDARD OF REVIEW

The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995).

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996); *Reavis v. Slominski, supra*; *German v. Swanson*, 250 Neb. 690, 553 N.W.2d 724 (1996).

In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995).

In an action tried to the court, the findings of the court will not be disturbed on appeal unless clearly wrong. *Steuben v. City of Lincoln*, 249 Neb. 270, 543 N.W.2d 161 (1996); *RaDec Constr. v. School Dist. No. 17*, 248 Neb. 338, 535 N.W.2d 408 (1995); *VRT, Inc. v. Dutton-Lainson Co.*, 247 Neb. 845, 530 N.W.2d 619 (1995).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Brams Ltd. v. Elf Enters.*, 253 Neb. 932, 573 N.W.2d 139 (1998); *Mandolfo v. Chudy*, 253 Neb. 927, 573 N.W.2d 135 (1998); *State ex rel. Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Abboud v. Papio-Missouri River NRD*, 253 Neb. 514, 571 N.W.2d 302 (1997); *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997); *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

## ANALYSIS

### Expert Testimony

The evidence in the instant case establishes that the driver of the pickup ran the stop sign and would support a finding that

whoever was driving the pickup was negligent. The issue is whether enough evidence was presented to support a finding of who was driving the pickup.

When appellee appealed the original trial court decision granting appellant's motion for summary judgment, she alleged that the trial court erred in striking the expert opinion of Lynch. In making a determination of the merit of this assignment of error, the Court of Appeals considered the admissibility of Lynch's opinion. The Court of Appeals held that the evidence was sufficient to support Lynch's opinion. The Court of Appeals also held that the determination of the driver of the pickup was a jury question and that the district court abused its discretion in specifically finding that Lynch's expert testimony should be stricken as a matter of law. The Court of Appeals then remanded the cause for further proceedings on the issue of the liability of appellant. It is this new trial that gives rise to this appeal.

On appeal to this court, appellant now contends that the expert testimony of Lynch regarding the identity of the driver of the pickup was based on speculation and was erroneously admitted by the trial court over the objection of counsel. Appellant also contends that the trial court erred in failing to strike Lynch's opinion.

Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998); *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996); *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994); *Wicker v. Vogel*, 246 Neb. 601, 521 N.W.2d 907 (1994).

The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *Talle v. Nebraska Dept. of Soc. Servs., supra*; *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

Under the law-of-the-case doctrine, all matters which expressly or by necessary implication are adjudicated by an

appellate court become the law of the case on remand for a new trial and will not be considered again unless it is shown that the facts presented at the second trial are materially and substantially different from the facts presented at the first trial. *Talle v. Nebraska Dept. of Soc. Servs., supra.*

For purposes of the law-of-the-case doctrine, the burden of showing a material and substantial difference in the facts is on the party asserting the difference. *Id.* The Court of Appeals expressly ruled on the admissibility of Lynch's testimony in a previous stage of this suit. Appellant has not shown that the facts presented at the second trial were materially and substantially different from the facts presented at the first trial. We find, therefore, that the Court of Appeals' decision precludes our reconsideration of the issue of the admissibility of Lynch's expert opinion under the law-of-the-case doctrine. Accordingly, appellant's assignments of error regarding the testimony of Lynch are without merit.

### ADMISSION OF EXHIBIT

Appellant asserts that it was error for the trial court to admit exhibit 87, appellee's supplemental interrogatory answer, over the objection of counsel because the exhibit was cumulative and based on hearsay.

During the cross-examination of Lynch, appellant approached Lynch and showed him exhibit 87, and confirmed that the exhibit summarized the opinions expressed by Lynch at trial and that none of those opinions had changed. Appellant proceeded to question Lynch on the location of the youths' bodies, the physical collision data, the steering wheel deformity, the vehicular rotation, the point of ejection of the youths, the at-rest positions of their bodies, and the passenger-door deformity.

On redirect, appellee attempted to rehabilitate Lynch's testimony through a comparison of the consistency of his pretrial and trial opinions. Appellee offered exhibit 87, and the trial court received it into evidence over appellant's objection that the evidence in the exhibit was cumulative.

We have held that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and, in case the ruling is one admitting evi-

dence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if a specific ground is not apparent from the context. *Allphin v. Ward*, 253 Neb. 302, 570 N.W.2d 360 (1997).

In the instant case, appellant did not specifically object at trial to the admission of the exhibit on the grounds of hearsay. Rather, appellant objected that the evidence in the exhibit was "cumulative." Therefore, since no specific hearsay objection was made at the time the exhibit was offered, appellant is barred from asserting hearsay as a ground for error by the trial court.

Accordingly, we now consider appellant's contention that the exhibit was erroneously admitted because its evidence was cumulative. Neb. Ct. R. of Discovery 33(b) (rev. 1996) states that answers to interrogatories may be used to the extent permitted by the Nebraska Evidence Rules. Therefore, the admission into evidence of an answer to an interrogatory is governed by the Nebraska Evidence Rules. Pursuant to Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), relevant evidence may be excluded if its probative value is substantially outweighed by needless presentation of cumulative evidence. We have stated that under this rule, a trial judge has broad discretion in determining the admissibility of evidence. See *State v. Dixon*, 240 Neb. 454, 482 N.W.2d 573 (1992). Because the exhibit was used to rehabilitate the testimony of a witness whose veracity was challenged by appellant's use of the exhibit on cross-examination, the information it contained was relevant. We do not find any prejudice to appellant based on this exhibit. Therefore, the trial court did not abuse its discretion in admitting this exhibit over appellant's objection.

## DIRECTED VERDICT

Appellant contends that the trial court erred in failing to sustain his motion for a directed verdict because there was insufficient evidence to identify the driver of the pickup.

Appellant argues that based on the evidence and testimony introduced, the jury was required to speculate as to whether Mueller or Bridge was the driver of the pickup and that therefore, his motion for directed verdict should have been granted.

The evidence in this case indicated that the driver of the pickup was either Mueller or Bridge. We have held that

" '[n]egligence, like any other fact, may be proved by circumstantial evidence. This is evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred. . . .' " *McVaney v. Baird, Holm, McEachen,* 237 Neb. 451, 462-463, 466 N.W.2d 499, 508 (1991).

The evidence indicates that the pickup in question was owned by the Bridge family and was used by Bridge. Bridge drove the pickup to the campsite and argued with Carpenter about driving home. Mueller did not have a driver's license, was never seen behind the wheel of the pickup, and expressed no interest in driving. Further, Lynch opined that Mueller was not seated behind the steering wheel or by the passenger door at the time of the impact. Based on this evidence and the benefit of every inference that is reasonably deducible therefrom, we find that reasonable minds could draw the conclusion that Bridge was the driver of the pickup. Therefore, the trial court did not err in overruling appellant's motion for directed verdict.

## PROXIMATE CAUSE OF LOSS

Appellant alleges that the trial court erred in finding the entire $270,000 jury verdict to be collectible. There are three elements a plaintiff alleging attorney negligence must prove: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client. *McWhirt v. Heavey,* 250 Neb. 536, 550 N.W.2d 327 (1996); *Patterson v. Swarr, May, Smith & Anderson,* 238 Neb. 911, 473 N.W.2d 94 (1991); *McVaney v. Baird, Holm, McEachen, supra.* In the present case, there is no question that appellant was employed by appellee. It is also clear that the evidence would support a finding that appellant failed to file a wrongful death cause of action before the statute of limitations had run, thereby neglecting his reasonable duty. The issue in the present case, then, is whether appellant's negligence was the proximate cause of loss to appellee.

By stipulation of the parties, after the jury returned a verdict in favor of appellee for $270,000, the trial court held a bifurcated hearing to determine what portion of the $270,000 verdict was the proximate result of appellant's negligence. It should be

noted that the method of bifurcation used in this trial is not approved, since the proximate result of appellant's negligence should have been submitted to the trier of fact in the same trial as the other issues. However, in this case, since the parties stipulated to this procedure, we are not inclined to reverse on this issue. In rendering judgment as the finder of fact, the trial court resolves credibility issues and weighs the evidence in the same manner as a jury, and its factual findings have the same effect as a jury verdict. *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996).

We first note that the only reason a separate bifurcated hearing on the third prong of the malpractice action was proper was because the parties stipulated to it. The record indicates that the following discussion was had by counsel and the court:

MR. DOMINA [Counsel for appellee]: . . . There is an area in this lawsuit in which I think there will be a reference to insurance. And that's one of the things we have to prove about the case within the case is that a judgment could have been won and collected. And so it may be that the defendant will be asked — Unless you want to agree that it's not an issue. Maybe we can agree that it's not an issue. Otherwise, I think we've got to ask the defendant if he investigated collectibility. Maybe if we can just take that issue off the table, then it doesn't come up at all.

THE COURT: What do you say to that?

MR. MEUSEY [Counsel for appellant]: I think that [collectibility] probably is a legal issue. It's probably one of the elements of proof in a case that they have to prove the collectibility of the judgment. I don't think that that's relevant to the issue of the measure of damages. I think it's a matter for the court afterwards. You could prove that out of the presence of the jury as to what the man's insurance was and that sort of thing.

MR. DOMINA: I'll stipulate to that approach.

Later, the following discussion was had:

MR. DOMINA: . . . If we prevail, we then have a separate hearing on the question of collectibility to you alone.

THE COURT: That's what we'll do on that then.

MR. MEUSEY: Agreed.

Appellant concedes that $100,000 of the $270,000 judgment is collectible because coverage would have been available for the $100,000 under the insurance policy covering the pickup issued by State Farm to the Bridges. Appellant contends, however, that the remainder of the judgment, $170,000, was not a loss arising as a proximate result of appellant's negligence. Because appellant conceded that $100,000 of the $270,000 judgment was collectible, the only thing to be decided at that hearing was an interpretation of the Farm Bureau contract, and this is decided as a question of law. Appellant recognizes that the Carpenters had an underinsured motorist policy with Farm Bureau for an additional $200,000. The Farm Bureau policy provides:

> We will pay the damages for **bodily injury** to an **insured** that an **insured** is legally entitled to collect from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be caused by accident and arise out of the ownership, operation or use of an **underinsured motor vehicle**.

(Emphasis in original.)

Appellant argues, however, that a claim could still be made on the policy; that even if a claim could not be made, the statute of limitations barring such claim ran after he was discharged by appellee; and that therefore, he is not liable for any amount payable under that policy.

Specifically, appellant first argues that a claim for uninsured/underinsured motorist benefits sounds in contract and that therefore, a cause of action for breach of contract does not accrue, such that the statute of limitations begins to run, until breach occurs. Therefore, since no claim has been submitted and no denial has occurred, there has been no breach.

Appellant next argues that under the first of two minority views of breach of contract from other jurisdictions, the action accrues either when the insured settles with or obtains a judgment against the tort-feasor, or when the insured knows or should have known of the tort-feasor's uninsured or underinsured status. Under this view, appellant argues that in the instant case, a claim for underinsured motorist benefits did not accrue until entry of the judgment in October 1996, when the court

determined that appellee was legally entitled to underinsured motorist benefits. Therefore, appellee has 5 years from that date to bring a cause of action against Farm Bureau.

Appellant also argues that under a second minority view, a cause of action for underinsured motorist benefits accrues at the time of the accident. Under this theory, appellant argues that even if the statute of limitations was activated by the accident, appellee had until August 8, 1993, to seek underinsured motorist benefits, but failed to do so. Because appellant stopped representing appellee in December 1990, his representation did not prevent appellee from recovering benefits.

Each of these arguments is without merit. According to the terms of the policy, in order for Farm Bureau to pay damages for bodily injury, the insured must be legally entitled to collect the damages from the owner or operator of an underinsured motor vehicle. Because appellant failed to bring a wrongful death action within the statute of limitations, appellee never attained the status of one legally entitled to collect. See *Western Fire Ins. Co. v. Miller*, 98 Or. App. 79, 81, 778 P.2d 965, 966 (1989) (holding that insured whose tort action was barred by statute of limitations was not entitled to recover underinsured motorist benefits under policy because insured was not " 'legally entitled to recover damages' " against tort-feasor).

We find that the trial court was not clearly wrong in finding the entire $270,000 loss to appellee was proximately caused by appellant's negligence.

### MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT AND MOTION FOR NEW TRIAL

In order to sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996); *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996); *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996).

Having already determined that reasonable minds could draw the conclusion that Bridge was the driver of the vehicle, we find the trial court properly denied appellant's motion for judgment notwithstanding the verdict.

A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Heye Farms, Inc. v. State,* 251 Neb. 639, 558 N.W.2d 306 (1997); *Farmers & Merchants Bank v. Grams, supra; Hartley v. Guthmann,* 248 Neb. 131, 532 N.W.2d 331 (1995).

Having determined that no error prejudicial to the rights of the unsuccessful party has occurred, we find that the trial court did not abuse its discretion by overruling appellant's motion for new trial.

## CONCLUSION

Because we find appellant's assignments of error to be without merit, the judgment of the trial court is affirmed.

AFFIRMED.