IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BAILEY V. M.B.C. CONSTRUCTION CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TAMRA J. BAILEY, APPELLANT,

V.

M.B.C. CONSTRUCTION CO., INC., APPELLEE.

TONY SHARP, APPELLANT,

V.

M.B.C. CONSTRUCTION CO., INC., APPELLEE.

Filed February 18, 2020.    Nos. A-19-156, A-19-157.

Appeals from the District Court for Douglas County: JAMES T. GLEASON, Judge. Reversed and remanded for further proceedings.

Greg Abboud and Kathleen Person, of Abboud Law Firm, for appellants.

Raymond Walden, David M. Woodke, and Earl G. Green III, of Woodke & Gibbons, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Tamra Bailey and Tony Sharp brought lawsuits against M.B.C. Construction Co., Inc. (M.B.C. Construction), alleging they sustained damages as the result of a motor vehicle accident that occurred within a construction site maintained by M.B.C. Construction on 96th Street near its intersection with Adams Street in Omaha, Nebraska. Following a jury trial, verdicts were rendered

in favor of M.B.C. Construction. Bailey and Sharp have appealed. For the reasons set forth herein, we find that the district court erred in its ruling that expert testimony and evidence regarding an Occupational Safety and Health Administration (OSHA) violation would not be submitted to, or considered by, the jury and in failing to instruct the jury on its application. Accordingly, we reverse, and remand for further proceedings.

## II. STATEMENT OF FACTS

These consolidated actions arose out of an automobile accident that occurred at night on 96th Street near its intersection with Adams Street in Omaha. Sharp was a passenger in the vehicle driven by Bailey. At the time of the accident, 96th Street was under construction. Bailey attempted to turn onto 96th Street from the parking lot of the Willow Park Apartment Complex and, instead of turning onto an accessible lane of traffic, she turned and proceeded into the construction zone. Bailey crashed into a paver that was left by M.B.C. Construction in the construction zone rendering her car inoperable due to front-end damage. Both Bailey and Sharp sustained injuries resulting from the accident.

### 1. TRIAL

At trial, testimony for Bailey and Sharp was provided by Bailey; Sharp; Richard Bishop, a city inspector; George Lynch, an accident reconstruction specialist; and Terry Stentz, an expert witness regarding OSHA. Jeff Brown, M.B.C. Construction's general manager and project manager, testified on behalf of M.B.C. Construction.

### (a) Bailey and Sharp

The following facts were established through testimony by Bailey and Sharp. Around 9:30 or 10 p.m. the night before the accident, Bailey drove herself and Sharp to a local bar in Bailey's automobile. After arriving at the bar, Bailey proceeded to the area of the bar where a band was playing, while Sharp went to a different area to play pool. During the course of the night, Sharp saw Bailey with a beer in her hand from time to time. Bailey testified she had two beers that night while at the bar but was unsure how much Sharp drank.

Sometime between 12:30 and 1:00 a.m., Bailey and Sharp left the bar. When they left, Sharp felt a "little bit" intoxicated and Bailey drove. Bailey testified that she decided to take 96th Street south to Harrison Street in order to check on her daughter who lived in the Willow Park Apartment Complex located on the west side of South 96th Street between Park Drive and Harrison Street. Once Bailey was on 96th Street, she headed south. At that time, 96th Street consisted of four lanes of traffic, two going south and two going north. The southbound lanes were under construction and closed to traffic and the northbound lanes were temporarily reconfigured so there was one lane for southbound traffic and one lane for northbound traffic. To access the parking lot for the Willow Park Apartments, Bailey had to turn right from the temporary southbound lane of 96th Street; cross over the western lanes of South 96th Street, which were under construction; and then enter the parking lot.

After entering the parking lot and seeing that her daughter's vehicle was parked there, Bailey exited the parking lot. Because she intended to again proceed south on 96th Street, Bailey turned right after exiting the parking lot and attempted to enter the temporary, accessible

southbound lane but entered into the construction zone instead. After travelling south on 96th Street for about a quarter of a mile at a speed she described as 25 miles per hour, Bailey suddenly saw "something very large" blocking the road in front of her. Bailey testified that she did not see the object, which she later learned was a construction paver, until she was "maybe eight to ten feet" from it. Bailey testified that her car headlights were on and she was able to see the roadway "okay." Nevertheless, once she finally identified the object, Bailey testified she was unable to stop her car in time to avoid colliding with the object, which was a construction paver. Much of the testimony then centered on how Bailey entered the construction zone, whether it was properly barricaded or contained sufficient warnings, and how the accident ensued.

After the accident, Bailey laid down outside the driver side door of her car, complained that she hurt, and told Sharp, "I just want to go home." Sharp called his friends to come pick them up. Although both Bailey and Sharp testified they left the bar sometime around 1 a.m. and acknowledged the accident site was only 10 to 15 minutes from the bar, they acknowledged they did not contact anyone about the accident until after 2 a.m., and Sharp testified he had "no clue" what happened between the time of the accident and the time he made the first phone call at 2:17 a.m. When asked why he did not call the police or emergency services, Sharp testified it did not occur to him to call because he did not think he needed to call the police after a single vehicle accident. It was not until later that morning that Sharp ultimately called the police to report the accident.

### (b) Richard Bishop

Bishop, the city inspector, testified that he was responsible for inspecting the project construction site to observe construction activities, document those activities, and to ensure the construction activities met the standards and specifications set forth in the Standard Specifications for Public Works Construction 2003 3rd Edition adopted by the City of Omaha (City Standards). Bishop testified he was required to be on the construction site daily any time M.B.C. Construction was there and was responsible for notifying M.B.C. Construction if he noticed any condition which departed from the City Standards. Bishop testified that there are specific city standards which govern barricades for city construction projects. He testified that the specific requirements for placement and types of barricades for this project were dictated by the project's traffic control plan; the City of Omaha Barricading Standards, Specification Methods, and Materials (City Barricade Standards); and the Manual of Uniform Traffic Control Devices (MUTCD), all of which are incorporated into the City Standards at section 7.08. While looking at exhibit 66, a photograph depicting barricades at the intersection of the Willow Park Apartment Complex and southbound 96th Street, Bishop agreed that the barricades did not appear to be placed correctly.

### (c) George Lynch

Lynch, an accident reconstruction specialist, testified that the paver was sitting in the construction zone with no reflective devices on it. Lynch testified that

> the causation of this accident was there were no barricading devices, no reflective devices, or anything else located directly in front of the hazard, that being the paver located on South 96th Street, and/or the big pavement gap that was there on South 96th Street to forewarn any vehicle of that apparent hazard.

(d) Jeff Brown

Brown testified that he was general manager and project manager for M.B.C. Construction in connection with this project and his responsibilities included ensuring that M.B.C. Construction properly adhered to the project's traffic control plan, which plan included placement of traffic control devices. Brown testified that it retained Todco as a subcontractor to supply, place, and inspect barricades and barrels according to the traffic control plan.

Brown opined that the traffic control plan for the project was created in accordance with the City Standards which incorporated the City Barricade Standards and the MUTCD. He testified that a hierarchy existed among the plan and various rules in relation to dealing with any conflicts or inconsistencies therein. Specifically, Brown opined that the traffic control plan trumped all other regulations, including the MUTCD and OSHA regulations, and further, that the City Barricade Standards controlled specifications for barricades on the project and not OSHA.

Brown contradicted Lynch's testimony claiming the traffic control plan, which governed the project, did not require that barricade or warning devices be placed in front of the paver and were not required by the City.

As it relates to barricades protecting the construction zone generally, Brown agreed M.B.C. Construction was contractually obligated to create and maintain access to private parking areas along 96th Street, including the Willow Park Apartment Complex. He further acknowledged that, in relation to these access roads, the plan only required "road access" barricades being placed at the very north and south ends of the project. He testified that M.B.C. Construction did set up "road closed" barricades immediately south of the Willow Park Apartment access drive and did acknowledge barricading responsibilities at these sites to keep traffic exiting from private drives, like Willow Park, from turning into the construction zone.

During cross-examination, Brown acknowledged the following paragraphs were contained within the contract between the City of Omaha and M.B.C. Construction in relation to safety, warning, and barricade responsibilities on the project:

**ADDITIONAL GENERAL PLAN NOTES**
SAFETY

a[.] The Contractor/Subcontractor shall carry out his/her operations in strict accordance with all OSHA and manufacturer's safety requirements, and all local state and federal regulations[.] Particular attention is drawn to those safety requirements involving entering confined spaces[.] It shall be the Contractors/Subcontractors [sic] responsibility to be familiar with, and to ensure his/her employees are training [sic] in and follow, the said OSHA and manufacturers' safety requirements and all local, state and federal regulation[s] pertaining to all aspects of the work[.]

b[.] The City of Omaha Environmental Services Safety Manual is available for review for informational purposes upon request of the Contractor/Subcontractor[.] This manual is the City of Omaha's safety plan for its own employees and review of said document does not relieve Contractor/Subcontractor of having his/her own safety plan, providing proper safety equipment and being responsible for his/her employee's safety in accordance with federal, state and local regulations[.] The City of Omaha makes no warranties nor representations as to the sufficiency of its Safety Manual for any general or

specific purposes[.] The City of Omaha is not responsible for Contractor Safety or that of his/her Subcontractors[.]

  c[.] The Contractor shall refer to Standard Specification, Section 720 if hazardous material is encountered[.]

  . . . .

## BARRICADES AND WARNING SIGNS

  The Contractor shall furnish and maintain all necessary barricades, warning signs, and lights as per the current edition of the current policies and Standard Specifications of the City of Omaha[.] Where city policies and the specifications are silent, the current edition of the "Manual on Uniform Traffic Control Devices" shall govern[.] Each individual sign attached to an individual barricade shall be measured and paid for as a single unit for each day that it is in use[.]

(e) Terry Stentz

Stentz testified by way of videotape deposition played at the trial. Stentz testified that he is an associate professor in the College of Engineering at the University of Nebraska, Lincoln, and an associate professor in the College of Health at the University of Nebraska Medical Center in Omaha. Stentz stated that his training is in industrial engineering, occupational health and safety science, and management. He has a Ph.D. from the University of Nebraska in human performance and factors and a master's degree in industrial engineering. He testified his areas of practice have always been in environmental, occupational, safety science, and health. In connection with construction safety management, Stentz teaches a graduate course on occupational health and safety that relates directly to construction and construction projects.

  Stentz testified that the government regulations which specifically pertained to construction sites are promulgated by OSHA and are found at 29 CFR 1926. He explained OSHA is an agency under the Department of Labor that basically governs all of the safety aspects in the general construction industry for every employer in the United States. He also discussed the MUTCD and stated it is the primary document issued by the Department of Transportation which covers all devices, signage, color, and coding used to control traffic on roadways. Specifically, Stentz testified that OSHA regulation 1926.600 and MUTCD §§ 6C8, 6C9, and 6F.63 had direct application to this construction site and this accident. OSHA regulation 1926.600(a)(1) which was originally offered and received by the court as exhibit 15 over M.B.C. Construction's objections that it was cumulative and hearsay, provides: "All equipment left unattended at night, adjacent to a highway in normal use, or adjacent to construction areas where work is in progress, shall have appropriate lights or reflectors, or barricades equipped with appropriate lights or reflectors, to identify the location of the equipment."

  Stentz ultimately opined M.B.C. Construction violated the standard of care for construction safety management by failing to comply with OSHA regulation 1926.600 and aforementioned sections of MUTCD. Stentz then detailed how barricades or reflective devices should have been placed so as to conform to such standards.

## 2. Jury Instruction Conference

During the jury instruction conference, Bailey and Sharp proposed the following jury instruction:

> It is claimed that at [sic] an Occupational Safety and Health Administration (OSHA) safety regulation was violated. If you find that it was true, that does not necessarily prove negligence. The violation of the safety regulation is evidence that you may consider, along with all of the other facts and circumstance in the case, in deciding whether or not there was any negligence.

However, the district court informed counsel that after further considering M.B.C. Construction's objections to the OSHA materials and reviewing applicable case law and the offered OSHA regulation, the court decided both testimony and documentary evidence of the alleged OSHA violation would not be submitted to the jury for consideration. The court also refused Bailey and Sharp's two proposed jury instructions covering the alleged OSHA violation. The district court instructed the jury to disregard any testimony from any witness regarding OSHA and withdrew exhibit 15 from evidence going to the jury.

## 3. Jury Verdicts and Posttrial Motions

Following the court's submission of the jury instructions and the jury verdict forms to the jury, in Sharp's case, the jury returned verdict form number 4, which noted that the jury found Sharp did not meet his burden of proof, and the jury found for M.B.C. Construction. In Bailey's case, the jury returned verdict form number 1, which noted that the jury found Bailey did not meet her burden of proof, and the jury found for M.B.C. Construction.

Following the verdicts, Bailey and Sharp filed a motion for new trial arguing, among other things, that irregularity in the court proceedings prevented them from having a fair trial and the jury instructions were improper. The district court determined it committed no errors and denied the motion for new trial, from which Bailey and Sharp appeal.

## III. ASSIGNMENTS OF ERROR

On appeal Bailey and Sharp contend that the district court erred in (1) striking the testimony of Bailey and Sharp's expert witness as it related to OSHA; (2) refusing to give Bailey and Sharp's proposed jury instruction stating that a violation of OSHA can be used as evidence of negligence; (3) introducing a new concept when giving jury instructions that were not supported by the evidence and was prejudicial to Bailey and Sharp's case; (4) giving a jury instruction on assumption of risk without specifically identifying the risk allegedly assumed; (5) denying their motion for new trial based on M.B.C. Construction's witness' altered trial testimony from that given during discovery; and (6) denying their motions for new trial without accepting the applicable proposed exhibits and reviewing the evidence to determine the merit of their motions.

## IV. STANDARD OF REVIEW

The standard for reviewing the admissibility of expert testimony is abuse of discretion. *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019).

An appellate court reviews a trial court's ruling on a motion for a new trial for an abuse of discretion. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015). Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018).

## V. ANALYSIS

### 1. EVIDENCE AND JURY INSTRUCTIONS RELATING TO OSHA

We first address Bailey and Sharp's first two related assignments of error: the district court erred in striking expert witness testimony and exhibit 15 governing OSHA regulation 29 CFR 1926.600 and erred in failing to instruct the jury on the OSHA regulation's application to the case.

Bailey and Sharp's tendered expert witness Stentz attempted to incorporate OSHA regulation 29 CFR 1926.600 into his opinion by stating that M.B.C. Construction's failure to adhere to the regulation was an issuable act of negligence on its part. During trial, the court allowed Stentz to render his opinion and allowed OSHA regulation 29 CFR 1926.600 to be admitted into evidence over M.B.C. Construction's objections that it was cumulative and hearsay. However, following the close of the evidence and during the jury instruction conference governing the subject matter of the effect of OSHA regulation 29 CFR 1926.600, the court apparently changed its decision and, before specifically reading the jury instructions to the jury, instructed the jury as follows:

> Before I read the [jury] instructions, I am advising you at this time that I have ruled as a matter of law that the provisions of the United States Occupational Health and Safety Act, known as OSHA, do not apply to this situation, the facts of this incident. That is a ruling I've made as a matter of law. So any thoughts, concerns or issues that you may have in your deliberations with regard to OSHA, it doesn't apply.

Later, after the jury was excused to begin deliberations, the following colloquy took place between the court and counsel:

> THE COURT: We're still on the record but out of the presence of the jury. It's my understanding we have a very [sic] request with regard to the OSHA exhibit; is that correct?
>
> [ATTORNEY FOR M.B.C. CONSTRUCTION]: 15? Its [sic] right here.
>
> THE COURT: It's [sic] understanding defense wants to withdraw the exhibit, have it withdrawn; is that correct?
>
> [ATTORNEY FOR M.B.C. CONSTRUCTION]: Yes.
>
> THE COURT: And you object?
>
> [ATTORNEY FOR BAILEY/SHARP]: Correct.
>
> THE COURT: Based on my previous ruling regarding the inapplicability with regard to this case, Exhibit 15 is withdrawn and removed from evidence.

Bailey and Sharp first assign that the court's subsequent striking of that portion of Stentz' testimony governing M.B.C. Construction's violation of the standard of care for failing to adhere to 29 C.F.R. 1926.600 and removal of exhibit 15 was prejudicial error. We agree.

In *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 195-96, 202 N.W.2d 157, 165 (1972), the Nebraska Supreme Court held "[a] violation of an administrative rule or of a private safety regulation is independent evidence of negligence, under all the circumstances, provided an expert witness incorporates the regulation in his opinion as to an issuable act of negligence and the evidence would probably aid the trier of fact." More recently, in *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 564, 713 N.W.2d 471, 479 (2006), the Nebraska Supreme Court discussed the application of OSHA regulation violations in connection with construction negligence claims involving nonemployees and concluded: "We hold that in a negligence action brought by a nonemployee third party against a construction company, a violation of an OSHA regulation, while not negligence as a matter of law, may nonetheless be evidence of negligence to be considered with all the other evidence in the case." Taken together, Bailey and Sharp's expert laid proper foundation for the admissibility of Stentz' opinion which incorporated 29 CFR 1926.600 and was originally allowed by the court only to be stricken following the parties' jury instruction conference.

The district court appeared to articulate its rationale for its ruling during the jury instruction conference. In addressing Sharp and Bailey's proposed jury instruction governing OSHA, the court stated:

> With regard to the plaintiff's instruction regarding OSHA, I denied that instruction for the reason that I do not think the case of Orduna v. Total Construction Services is applicable. I've read the case. That case stands for the proposition that OSHA can apply to third parties present in a confined work space. The facts and circumstances of this case are such that there was no confined work space at all. And that is the reason I have declined as a matter of law to instruct the jury on OSHA.

Following this jury instruction conference, the district court then made its ruling that it was striking those portions of the record which referenced OSHA and instructing the jury that OSHA did not apply. Aside from the procedural irregularity in striking all reference to OSHA which had previously been adduced at trial, including but not limited to Stentz' testimony that OSHA regulation 29 CFR 1926.600 formed part of the applicable standard of care for this project, without any motion to strike such testimony or references, the court appears to have misread *Orduna*. At no point in *Orduna* does the Nebraska Supreme Court limit its ruling governing the admissibility of OSHA violations to confined spaces. Nor does M.B.C. Construction appear to argue the same. Instead, M.B.C. Construction argues that the district court did not err in striking all references to OSHA because Stentz' reference to OSHA regulation 29 CFR 1926.600 was cumulative of Lynch's testimony and that Brown separately testified that OSHA was not part of the applicable standard of care under these circumstances. We will briefly address those arguments because M.B.C. Construction did lodge an objection on these grounds during Stentz' testimony.

First, M.B.C. Construction argues that Stentz' testimony is merely cumulative of Lynch's testimony that the "cause" of the accident was M.B.C. Construction's failure to barricade or provide reflective devices in front of the paver. Although M.B.C. Construction does not identify

the specific evidentiary rule governing its objection that Stentz' testimony governing 29 CFR 1926.600 was cumulative of Lynch's testimony, the Nebraska Supreme Court has previously treated such objection as falling under Neb. R. Evid. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016). See *Carpenter v. Cullan*, 254 Neb. 925, 581 N.W.2d 72 (1998). In *Carpenter*, the Nebraska Supreme Court held:

> Pursuant to Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), relevant evidence may be excluded if its probative value is substantially outweighed by needless presentation of *cumulative* evidence. We have stated that under this rule, a trial judge has broad discretion in determining the admissibility of evidence. See *State v. Dixon,* 240 Neb. 454, 482 N.W.2d 573 (1992).

*Carpenter v. Cullan*, 254 Neb. at 936, 581 N.W.2d at 80 (emphasis supplied).

As noted above, the district court did not appear to strike Stentz' testimony on the basis that it was cumulative of Lynch's testimony. The court appeared to strike it because it concluded the regulation was not relevant. That was not M.B.C. Construction's objection and the court erred in ruling that the evidence would be stricken on relevancy grounds in light of Stentz' testimony that the regulation had specific application to the case at bar. As to the specific nature of M.B.C. Construction's objection that the testimony was "cumulative" of Lynch's testimony, Lynch was an accident reconstructionist who testified, without reference to OSHA, that the lack of warning around the paver was the cause of the accident. Lynch did not attempt to establish that he was an expert governing the standard of care on construction sites, his familiarity with OSHA, whether particular OSHA rules provided the standard of care under these circumstances, or whether M.B.C. Construction's conduct violated that specific standard of care. Conversely, Stentz identified himself as a construction site safety expert, testified to his knowledge of OSHA in reference to that expertise, identified 29 CFR 1926.600 as having application here, identified that the specific rule was violated here, and testified that M.B.C. Construction breached the standard of care, in part, in reference to that regulation and its violation. It cannot be said, under these circumstances, that Stentz' testimony here was merely cumulative of Lynch's testimony.

Separately, M.B.C. Construction argues that OSHA has no application here based upon the testimony of Brown. Specifically, M.B.C. Construction argues:

> A second reason exists for excluding Mr. Stentz's testimony and Exhibit 15 regarding the use of barricades and reflectors on the paver per OSHA regulations. Mr. Jeff Brown, the project manager for [M.B.C. Construction], testified at trial that any OSHA regulation that may or may not have been in play at the time of the project would have been trumped by the traffic control plan formulated by the City of Omaha and its engineers. That plan, which [M.B.C Construction] was contractually required to follow, made no mention of placing barricades in front of any construction equipment at night in the area of an ongoing Project. Therefore, [Bailey and Sharp]'s attempt to impose an OSHA regulation, and the testimony of Mr. Stentz about that regulation, on [M.B.C. Construction] essentially was an attempt to create a higher standard of care than what was contractually required of [M.B.C. Construction].

Brief for appellee at 23 (citations omitted).

Contrary to this assertion, the contract sections quoted in the factual recitation portion of this opinion referenced that M.B.C. Construction agreed to comply with both the traffic control plan and OSHA in connection with the project. If it was Brown's contention that this somehow resulted in a conflict of standards, a matter we cannot glean from reviewing this record, the Nebraska Supreme Court provided the manner for resolving such issue in *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 565, 713 N.W.2d 471, 479 (2006), in holding:

> In some instances, it may be that an OSHA regulation would impose a standard of conduct upon an employer greater than that which would be considered reasonable in the industry with respect to nonemployee third parties. In such an instance, in a suit brought by a nonemployee, the defendant could make that argument to the fact finder as part of the overall circumstances in its determination of negligence.

Such is the situation here. Stentz, who purports to be a construction safety expert, testified that in conjunction with MUTCD, OSHA regulation 29 CFR 1926.600 provided part of the applicable standard of care and that M.B.C. Construction violated the standard of care for failing to adhere to it. Brown opined OSHA does not provide the applicable standard of care under these circumstances and that Stentz attempts to apply a higher standard. Although M.B.C. Construction was free to argue Brown's opinion was superior to Stentz', the district court was not right to exclude it and erred in so doing.

M.B.C. Construction rightfully argues that in order to constitute reversible error, Bailey and Sharp must demonstrate that the district court's ruling striking portions of Stentz' testimony and exhibit 15 unfairly prejudiced a substantial right of theirs in connection with the proceedings. See *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013). We hold that the exclusion of this evidence did unfairly prejudice a substantial right of Sharp and Bailey. In connection with this claim, Sharp and Bailey essentially argued that M.B.C. Construction was negligent in failing to provide proper barricades and warnings in connection with the perimeter of the construction site where Bailey gained access, and separately negligent in failing to place proper barricades and/or warnings immediately in front of or near the paver which failures proximately caused the accident and their injuries. In making that claim, Sharp and Bailey relied upon Stentz, who referred to himself as a construction safety specialist, to establish the standard of care with respect to this construction site. In doing so, Stentz opined that OSHA regulation 29 CFR 1926.600 established the standard of care in the industry under these circumstances. By providing that testimony, Sharp and Bailey complied specifically with the procedures set forth by the Nebraska Supreme Court in *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972), in that Stentz laid foundation for the admissibility of this specific OSHA regulation which then made it a matter appropriate for the jury's consideration. By striking this evidence, the court removed a substantial component of Sharp and Bailey's case. Stated differently, the district court's order striking all reference in the proceeding to M.B.C. Construction's violation of OSHA unfairly prejudiced a substantial right of Bailey and Sharp and constituted reversible error.

Correspondingly, because Stentz' testimony governing 29 CFR 1926.600 and exhibit 15 was admissible, Sharp and Bailey were entitled to a jury instruction governing its application. Although we have already held the court's statement to the jury governing the application of OSHA was reversible error, we will address the issue of the proposed instruction because it is

likely to recur in connection with a retrial of this case. See *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001) (appellate court may, at its discretion, discuss issues unnecessary to disposition of appeal where those issues are likely to recur during further proceedings).

Here, Sharp and Bailey requested an instruction from the district court which stated:

It is claimed that at [sic] an Occupational Safety and Health Administration (OSHA) safety regulation was violated. If you find that was true, that does not necessarily prove negligence. The violation of a safety regulation is evidence you may consider, along with all other facts and circumstances in the case, in deciding whether or not there was negligence.

As previously stated, the trial court refused this proposed jury instruction along with striking all OSHA-related evidence. The Nebraska Supreme Court approved a nearly identical instruction in *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 565, 713 N.W.2d 471, 479 (2006), holding that the trial court "did not err in instructing the jury as to the effect of a possible violation of an OSHA regulation," and in finding that the instruction accurately conveyed the law. Likewise, the district court erred by failing to instruct the jury on OSHA's application to the case at bar.

## 2. REMAINING ASSIGNMENTS OF ERROR

Because we find that the district court erred in its ruling governing OSHA and in failing to instruct the jury on its application, we need not address the remainder of Bailey and Sharp's assignments of error which may or may not be relevant upon a retrial of this case. See *State v. Hickey*, 27 Neb. App. 516, 933 N.W.2d 891 (2019) (these issues are either not likely to recur on remand or must be evaluated in context of particular trial, and therefore, review of court's rulings in this trial would not necessarily determine how court should rule in new trial).

## VI. CONCLUSION

Having determined that the district court erred in its ruling governing OSHA and in failing to instruct the jury on its application, we reverse and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.